IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE:                                      :
                                            :        CASE NO. 1:14-bk-03237-RNO
RICKY E. WITMER                             :
PAMELA J. WITMER                            :        CHAPTER 13
                               Debtors      :
*********************************** : ***********************************
                                            :
JOHNNIE'S RESTAURANT & HOTEL                :
SERVICE, INC.                               :
                                            :
                               Plaintiff    :
                                            :
             v.                             :
                                            :
RICKY E. WITMER                             :
PAMELA J. WITMER                            :
                                            :
                            Defendants      :        ADVERSARY NO. 1:14-ap-00241-RNO

## OPINION[1]

Pending before the Court is a Motion for Summary Judgment. Defendants, Ricky E. and

Pamela J. Witmer's ("Debtors"), Motion for Summary Judgment was filed on August 18, 2015

("Motion"). For the reasons stated below, the Motion is denied in part and granted in part.

## I.      Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This

is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O).

## II.     Facts and Procedural History

A voluntary petition under Chapter 13 of the Bankruptcy Code was filed with Bankruptcy

Schedules on July 14, 2014, by the Debtors. Chapter 13 Voluntary Petition and Schedules A

through J and Summary of Schedules, July 14, 2014, ECF No. 1 (hereinafter "Schedules").

---

[1]      Drafted with the assistance of William J. Schumacher, Law Clerk.

Included on Schedule F (Creditors Holding Unsecured Nonpriority Claims) is an entry for Johnnie's Restaurant & Hotel Service, Inc. ("Johnnie's"), listing a contingent, unliquidated, and disputed claim. Schedules, ECF No. 1. However, Johnnie's has not filed a proof of claim in the underlying bankruptcy case. On July 1, 2015, the Debtors' First Amended Chapter 13 Plan was confirmed.

The present Adversary Proceeding was commenced by a three count Complaint filed by Johnnie's on October 24, 2014. This Court granted Johnnie's Motion for Leave to File an Amended Pleading on January 2, 2015. The amended three count complaint was filed on December 29, 2014 ("Amended Complaint"). The Debtors filed a Motion to Dismiss the Amended Complaint on January 20, 2015. After the parties submitted briefs in support of, and in opposition to, the Motion to Dismiss the Amended Complaint, a hearing was held on March 19, 2015. At the hearing, the Motion to Dismiss the Amended Complaint was settled by agreement of the parties and Counts II and III of the Amended Complaint were dismissed. Thereafter, the Debtors filed an Answer to Count I of the Amended Complaint. Defs.' Answer to Amended Complaint, April 16, 2015, ECF No. 25 (hereinafter "Answer").

The parties agree that the Debtors were the principals of, and organized, GEM Pizza Partners, LLC ("GEM"), for the purpose of operating a Stevi B's pizza restaurant. Defs.' Short Concise Statement Pursuant to Local Rule 56.1, ¶ 6, August 18, 2015, ECF No. 28 (hereinafter "Defs.' Short Statement of Facts"); Pl.'s Response to Defs.' Short Concise Statement Pursuant to Local Rule 56.1, ¶ 6, September 21, 2015, ECF No. 33 (hereinafter "Pl.'s Short Statement of Facts"). Between April 2011 and November 2012, Johnnie's prepared quotes to supply a commercial kitchen at the request of Debtor Rick Witmer. Defs.' Short Statement of Facts, ¶ 7;

2

Pl.'s Short Statement of Facts, ¶ 7. The quotes from Johnnie's were directed to the attention of "Rick or Pam." Id. The quotes resulted in a written proposal from Johnnie's. Id.

The gravamen of the Amended Complaint, Count I, is the allegation that the Debtors signed a contract with Johnnie's and then obtained commercial kitchen equipment from Johnnie's through misrepresentations, false pretenses, or actual fraud. Amended Complaint, ¶¶ 25-29, December 29, 2014, ECF No. 13 (hereinafter "Amended Complaint"). Essentially, Johnnie's alleges that the Debtors misrepresented the existence of $150,000.00 in escrow to pay on the contract with funds to be released in increments of $60,000.00, $60,000.00, and $30,000.00 ("Escrow Account"), or alternatively, that the Escrow Account was not intended to be used as represented by the Debtors. Amended Complaint, ¶¶ 16, 25-29. The Amended Complaint seeks an order declaring the Debtors' obligation to Johnnie's in the amount of $108,324.13, plus additional damages, and interest and attorney's fees to be nondischargeable under 11 U.S.C. § 523(a)(2)[2] of the Bankruptcy Code. Amended Complaint, ¶¶ 25-29.

On August 18, 2015, the Debtors moved for summary judgment. The Debtors filed their Statement of Undisputed Facts and Johnnie's filed their response thereto. Briefs have been submitted in support of, and in opposition to, the Debtors' Motion. The Motion is now ripe for decision.

---

[2]     Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

## III.  Discussion

### A.  Standard to Decide Motions for Summary Judgment Under F.R.B.P. 7056

Federal Rule of Bankruptcy Procedure 7056 incorporates, and makes applicable to bankruptcy adversary proceedings, Rule 56 of the Federal Rules of Civil Procedure ("F.R.C.P."). Pursuant to F.R.C.P. 56(a), the movant has the burden to prove that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "As to materiality. . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The absence of any genuine issue of material fact may be demonstrated by the pleadings, supporting affidavits, and discovery materials – such as depositions, answer to interrogatories, and admissions which are part of the record. *In re Premium Motor Cars, Inc.*, 404 B.R. 128, 130 (Bankr. W.D.Pa. 2009).

After the movant satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *In re LandSource Communities Dev. LLC*, 485 B.R. 310, 314 (Bankr. D.Del. 2013) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Instead, the nonmoving party is required to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party must go "beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. at 324 (internal citations omitted). Throughout this analysis,

4

the Court may not make credibility determinations or engage in any weighing of the evidence. *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013).  Instead, the Court must view the facts in the light most favorable to the non-moving party, Johnnie's, and draw all inferences in its favor. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001).

**B.    Do Genuine Issues of Material Fact Remain Under § 523(a)(2)?**

Since the filing of this Adversary Proceeding, the parties have limited the issue to one count – False Pretenses, False Representation, or Actual Fraud.  Johnnie's Amended Complaint retains only Count I, brought under § 523(a)(2), which contains two subsections.

Section 523(a) provides that certain debts are not dischargeable.  A debt is defined in § 101(12) as a liability on a claim.  Claim means a "right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A); *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010).

Consequently, because this is a nondischargeability proceeding, there is a two part inquiry.  First, does Johnnie's hold an enforceable obligation under nonbankruptcy law?  Second, is the debt nondischargeable under bankruptcy law – specifically § 523(a)(2)?  *In re Aug.*, 448 B.R. 331, 346-47 (Bankr. E.D.Pa. 2011).  Without an enforceable obligation, there can be no debt under § 523(a) which can be nondischargeable.  *In re Aug.*, 448 B.R. at 346-47.

**i.    Enforceable Obligation Under Nonbankruptcy Law**

I begin by determining whether Johnnie's holds an enforceable obligation under nonbankruptcy law.  *In re Empresas Omajede Inc.*, 537 B.R. 63, 94 (Bankr. D.P.R. 2015).  Property and contract rights are determined pursuant to state law.  *In re Empresas Omajede Inc.*,

5

537 B.R. at 94. "Until a cause of action arises under state law, a creditor does not have a 'claim' because there is no 'right to payment.'" *In re Schorr*, 299 B.R. 97, 101 (Bankr. W.D.Pa. 2003).

The alleged contract between the parties is a contract for the sale of goods. Pennsylvania was the first state to adopt the Uniform Commercial Code in 1953. *Williams v. W. Penn Power Co.*, 502 Pa. 557, 562 n.7, 467 A.2d 811, 813-14 n.7 (1983). The Pennsylvania Uniform Commercial Code has been adopted at 13 Pa.C.S. § 1101, et. seq. ("UCC"). Article II of the UCC applies to transactions in goods. *Whitmer v. Bell Tel. Co. of Pennsylvania*, 361 Pa.Super. 282, 288, 522 A.2d 584, 586-87 (1987).

Goods are defined under the UCC as "all things . . . which are movable at the time of identification to the contract for sale." 13 Pa.C.S. § 2105; *Field v. Golden Triangle Broad., Inc.*, 451 Pa. 410, 421-22, 305 A.2d 689, 695 (1973). Here, the kitchen equipment was movable at the time of the alleged contract. The alleged contract also contained a service component because it included the installation of the kitchen equipment. The parties agree that the alleged contract was primarily for the sale of kitchen equipment, not the provision of installation services. I conclude that whether or not a debt exists between the Debtors (or either Debtor individually) and Johnnie's must be analyzed under the UCC as a sale of goods.

Next, I must determine who, if anyone, is obligated to Johnnie's on the contract either by signature, or by acceptance of the goods. The Pennsylvania Statute of Frauds for the Sale of Goods governs when a signature is required and when acceptance of the goods satisfies the signature requirement. *Hessenthaler v. Farzin*, 388 Pa.Super. 37, 45, 564 A.2d 990, 994 (1989).

In Pennsylvania, the Statute of Frauds for the Sale of Goods ("Statute of Frauds") is codified in the UCC at 13 Pa.C.S. § 2201. *Stalnaker v. Lustik*, 1999 Pa.Super. 346, ¶¶ 7-8, 745

6

A.2d 1245, 1246-47 (1999). The Statute of Frauds requires that a contract for the sale of goods of more than $500.00 must be signed, either by the party against whom enforcement is sought, or by his authorized agent. 13 Pa.C.S. § 2201(a). Alternatively, a contract for the sale of goods for more than $500.00 is enforceable against a party that has received and accepted the goods. 13 Pa.C.S. § 2201(c)(3). Acceptance of goods may occur where a buyer fails to reject the goods, or takes other action inconsistent with the seller's ownership. *Beaver Valley Alloy Foundry, Co. v. Therma-Fab, Inc.*, 2002 Pa.Super. 402, ¶ 7, 814 A.2d 217, 220 (2002); 13 Pa.C.S. § 2606(a).

It is a basic tenet of agency law that an individual acting as an agent for a disclosed principal is not personally liable on a contract between the principal and a third party. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 Pa.Super. 60, 40 A.3d 145, 150 (2012) (discussing agency principles in application to a limited liability company). The Debtors appear to assert that GEM was the principal party to the contract with Johnnie's. Because GEM was created under Pennsylvania law, I must look to the Pennsylvania Limited Liability Company Law of 1994 ("LLC Law"). 15 Pa.C.S. § 8901 et. seq; see, Amended Complaint, ¶ 7; and, Answer, ¶ 7. If the Debtors only signed the contract as members of GEM, a limited liability company ("LLC"), this could preclude the Debtors' individual liability. Defs.' Mot. Summ. J., ¶¶ 18-21, August 18, 2015, ECF No. 28. I cannot determine from the present record whether only Debtor Ricky Witmer or both Debtors are members of GEM. Amended Complaint, ¶ 7; and, Answer, ¶ 7.

Under the LLC Law, similar to corporate shareholders, members are not typically liable for the obligations of the company solely by being members of the LLC. 15 Pa.C.S. § 8922(a); *In re LMcD, LLC*, 405 B.R. 555, 560 (Bankr. M.D.Pa. 2009); *Baird v. Macklin*, 2008 WL

7

5600765, *196 (Pa.Com.Pl. Dec. 11, 2008); *Bill Goodwin Const., LLC v. Wondra Const., Inc.*, 2014 WL 1415078, *4 (M.D.Pa. Apr. 10, 2014). Further, 15 Pa.C.S. § 8991(b) states that: "[a] member of a company is not a proper party to an action or proceeding by or against the company, except where the object is to enforce the right of a member against or his liability to the company." 15 Pa.C.S. § 8991(b). Importantly, this provides that members of a Pennsylvania LLC cannot be sued on the basis of vicarious liability for the torts or contracts of the LLC. *Bill Goodwin Const., LLC v. Wondra Const., Inc.*, 2014 WL 1415078, *4 (M.D.Pa. Apr. 10, 2014).

An exception to the general rule above is if the member acts as an agent of an LLC *and* specifically agrees to assume liability. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d at 150. A person acting as an agent assumes personal liability on a corporate contract when he executes a contract in his own name or voluntarily undertakes a personal responsibility. *Id.*

In this case, the alleged contract involved the sale of kitchen equipment for either $121,037.97 or $137,824.13. Both, the amount, and who may be obligated on the contract, are in dispute. Defs.' Short Statement of Facts, ¶ 17; Pl.'s Short Statement of Facts, ¶ 17. For the purported contract to be enforceable against one or both of the Debtors, one or both of the Debtors must have signed the contract in their individual capacity. Otherwise, the kitchen equipment must have been received and accepted by one or both of the Debtors. The Debtors assert that the signature, if any, or acceptance, if any, was on behalf of GEM, an LLC. Defs.' Short Statement of Facts, ¶ 6; Pl.'s Short Statement of Facts, ¶ 6.

Johnnie's Amended Complaint alleges that Debtor Rick Witmer signed the proposal for the amount of $124,757.81. Pl.'s Br. Opp'n. Summ. J., p. 2, September 21, 2015, ECF No. 34.

8

Johnnie's also alleges that Debtor Pamela Witmer was involved in the creation of the contract because the offers and written proposal were submitted to her and Debtor Ricky Witmer's attention. Pl.'s Short Statement of Facts, ¶¶ 8-9. Johnnie's attached to its Brief in Opposition to Summary Judgment the Affidavit of Rodney Hocker, President of Johnnie's, and the Debtor Ricky Witmer's answer to interrogatory number 6. These exhibits are offered in support of Johnnie's position that the Debtors are personally liable on the alleged contract. Pl.'s Br. Opp'n. Summ. J., Exhibits A & B, September 21, 2015, ECF No. 34. The contention essentially being that there was no representation by the Debtors that they acted on behalf of GEM.

Conversely, the Debtors contend that they did not individually order any kitchen equipment. Instead, they offer that GEM, the entity formed by the Debtors to operate the Stevi B's pizza restaurant, ordered the commercial kitchen equipment from Johnnie's. The following evidence was offered in support of the Debtors' position: an Affidavit by the Debtor Ricky Witmer stating he did not sign the proposal from Johnnie's; an alleged draft portion of a lease between GEM and Kimco Realty Corporation ("Kimco"), GEM's landlord, which purports to show the existence of the Escrow Account in favor of GEM; and, canceled checks written on the account of GEM payable to, and deposited by, Johnnie's. Defs.' Mot. Summ. J., ¶¶ 21-29 & Exhibits B, C, D, August 18, 2015, ECF No. 28.

Although the Debtors offer the above evidence in support of their position, I must view the facts in the light most favorable to Johnnie's. When doing so, the above evidence proffered by the Debtors does not eliminate a material issue of fact, instead it creates a material issue of fact. Also, I do not weigh the evidence at this stage. I cannot find that the Debtor Ricky Witmer neither signed the proposal from Johnnie's nor accepted the kitchen equipment in his individual

9

capacity and not as a disclosed agent for GEM. The signature on the proposal appears similar to the signatures on the cancelled checks proffered by the Debtors to support their premise that any contract existed not between the Debtors and Johnnie's, but between GEM and Johnnie's. Johnnie's alleges that the Debtors' answer to interrogatory number 6 states that Mr. Witmer did sign the proposal, but signed solely on behalf of GEM. Pl.'s Br. Opp'n. Summ. J., Exhibits A & B, September 21, 2015, ECF No. 34. A dispute about the validity of the signature or if the signature was made in a disclosed, representative, capacity creates a disputed material fact for trial. *In re Huskey*, 479 B.R. 827, 831-32 (Bankr. E.D.Ark. 2012).

Further, there is no dispute that the equipment was installed and invoiced on April 19, 2013. This shows acceptance of the kitchen equipment, when viewing the facts in the light most favorable to Johnnie's, because the recipient failed to reject the goods and took action inconsistent with Johnnie's ownership by retaining the kitchen equipment. Because I must view the facts in the light most favorable to Johnnie's, I cannot find that the proposal was unsigned and unenforceable under this requirement as to Debtor Ricky Witmer in his individual capacity. Nor can I find that the kitchen equipment was not accepted by the Debtor Ricky Witmer. The equipment was installed and invoiced and not rejected and the equipment was treated in a manner inconsistent with Johnnie's ownership. Viewing the alleged facts in the light most favorable to Johnnie's, I find, for purposes of this Motion, that an enforceable obligation has been stated against Debtor Ricky Witmer.

As to the Debtor Pamela Witmer again viewing the facts in the light most favorable to Johnnie's, I cannot find that Debtor Pamela Witmer neither received nor accepted the kitchen equipment in her individual capacity. There is a dispute of material fact as to the extent of the

10

involvement of the Debtor Pamela Witmer in the formation of any contract between the parties. This creates a genuine issue of material fact for trial.

Johnnie's has alleged that the contract is with the Debtors. I cannot find that there is no enforceable obligation against the Debtors when viewing the facts in the light most favorable to Johnnie's. Questions remain for trial. Against whom does an enforceable obligation lie? Who, if anyone, signed the contract and in what capacity? Did one or both of the Debtors accept the kitchen equipment in their individual capacity or on behalf of GEM? Again, I find that Johnnie's may have an enforceable obligation against one or both of the Debtors.

I will now turn to the § 523(a)(2) nondischargeability claim.

### ii.   Section 523(a)(2)(A)

Johnnie's Amended Complaint did not specify under which subsection of § 523(a)(2) Count I was brought - (A) or (B). I will first discuss § 523(a)(2)(A).

Section 523(a)(2)(A) provides that a debt is nondischargeable when it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . . ." 11 U.S.C. § 523(a)(2)(A).

Johnnie's alleges that but for the Debtors' representation of the Escrow Account in the amount of $150,000.00 with Kimco, GEM's landlord, Johnnie's would not have waived its customary fifty percent deposit requirement. Pl.'s Br. Opp'n. Summ. J., p. 2, September 21, 2015, ECF No. 34. Further, Johnnie's asserts it would not have ordered and installed the contracted for equipment under the January 8, 2013, order without the alleged misrepresentation of the Escrow Account. Id. The alleged misrepresentation resulted in damages to Johnnie's.

11

Amended Complaint, ¶¶ 16-18. Thus, under § 523(a)(2)(A), Johnnie's alleges that its claim against the Debtors should be nondischargeable.

In order to meet its burden concerning nondischargeability, Johnnie's must show each of the following elements by a preponderance of the evidence: (1) a misrepresentation, fraudulent admission, or deceptive conduct by the Debtors; (2) knowledge on the Debtors' part of the falsity or deceptiveness of the statement or conduct; (3) an intent by the Debtors to deceive Johnnie's; (4) justifiable reliance by Johnnie's on the Debtors' statement or conduct; and, (5) that Johnnie's suffered a loss or damages as a proximate cause of the false representation or act. *In re Coley*, 433 B.R. 476, 491 (Bankr. E.D.Pa. 2010); *In re Raisley*, 287 B.R. 639, 641–642 (Bankr. W.D.Pa. 2003); *In re Scott*, 294 B.R. 620, 628 (Bankr. W.D.Pa. 2003); *In re Casini*, 307 B.R. 800, 815 (Bankr. D.N.J. 2004). Although Johnnie's has the burden of proof at trial, on summary judgment, I must view the facts in the light most favorable to the nonmoving party, Johnnie's.

I will first discuss the requirements to prove fraud, misrepresentation, or false pretenses. Courts often distinguish between false representation and false pretenses. *In re Aug.*, 448 B.R. at 349. False representation requires that a creditor demonstrate that the debtor made a false or misleading statement. *Id*. To prove fraud or misrepresentation, a creditor may establish that the debtor entered into the contract with no intention of complying with the terms. *In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D.Pa. 2006). However, a mere breach of contract alone does not establish actual fraud or misrepresentation under § 523(a)(2)(A). *In re Antonious*, 358 B.R. at 182. Additionally, a creditor may demonstrate the failure of the debtor to disclose a material fact or the debtor's misrepresentation of a material fact constituting fraud or misrepresentation under § 523(a)(2)(A). *Id*.

12

A claim of false pretenses is a variation on a claim for false representation. False pretenses requires a "proof of an implied misrepresentation promoted knowingly and willingly that creates a misleading understanding of the transaction by the [creditor]." *In re Aug.*, 448 B.R. at 349-50. In other words, a false pretense is an implied misrepresentation or conduct which "creates and fosters a false impression" compared to an express misrepresentation. *Id.*

Here, Johnnie's alleges that the Debtors misrepresented or failed to disclose a material fact constituting fraud or misrepresentation. Johnnie's asserts that the Debtors made express statements about the existence and availability of the Escrow Account to pay Johnnie's. Pl.'s Br. Opp'n. Summ. J., Exhibits A & B, September 21, 2015, ECF No. 34. Allegedly, Debtor Ricky Witmer misrepresented that he would receive the first $60,000.00 from the Escrow Account in the future, which would be available to pay Johnnie's, when in fact the Debtor Ricky Witmer already knew that the first draw had been received and at least a portion of it had been spent. Pl.'s Br. Opp'n. Summ. J., p. 11, September 21, 2015, ECF No. 34.

Johnnie's also alleges that an implied misrepresentation resulted from the Debtors' fraudulent course of conduct, which induced Johnnie's to enter into a contract with the Debtors without its customary fifty percent deposit. Debtor Ricky Witmer's interactions and discussions with Johnnie's allegedly included statements about "draws in the amount of up to $60,000, $60,000, and $30,000" from the Escrow Account. Pl.'s Br. Opp'n. Summ. J., Exhibit B, September 21, 2015, ECF No. 34. This allegedly fostered a false impression that the Escrow Account was available to pay Johnnie's. Id. Johnnie's also contends that there were only $90,000.00 of draws, at most, yet to be received by the Debtors. Id. at p. 11. Johnnie's alleges that this created a false pretense about the availability of the Escrow Account to pay Johnnie's.

13

Based on the face of the pleadings and exhibits attached thereto, and viewing the facts in the light most favorable to Johnnie's, I cannot find that the Debtor Ricky Witmer did not make a material express or implied misrepresentation. Debtor Ricky Witmer allegedly made several statements and communicated to Johnnie's about the existence of the Escrow Account. Viewing the facts in the light most favorable to Johnnie's, the alleged express and implied misrepresentations appear to have been made in Debtor Ricky Witmer's individual capacity and not as a representative of GEM. Pl.'s Br. Opp'n. Summ. J., Exhibits A & B, September 21, 2015, ECF No. 34. The alleged false statements were material because they induced Johnnie's to complete performance of the contract and order and install the kitchen equipment. Id. at Exhibit B. Therefore, I cannot find that Debtor Ricky Witmer did not make a false representation to Johnnie's either through an express misrepresentation or false pretenses.

As to Debtor Pamela Witmer I cannot determine that a material fact is not in dispute because both parties allege exactly the opposite – Johnnie's that Debtor Pamela Witmer was involved in contract discussions and the Debtors that Debtor Pamela Witmer was not involved. See, e.g., Pl.'s Br. Opp'n. Summ. J., p. 9, September 21, 2015, ECF No. 34. This is a material fact in dispute. To determine which party is correct on the culpability, if any, of Debtor Pamela Witmer this Court must have either additional documentary evidence or testimony on which to base its determination. At this stage I may not weigh the credibility of the evidence as to the extent of Debtor Pamela Witmer's involvement and I must view the facts in the light most favorable to Johnnie's. I conclude that I cannot find that Johnnie's does not have a claim against Debtor Pamela Witmer for misrepresentation or false pretenses.

Beyond whether or not there was a misrepresentation, fraudulent admission, or deceptive conduct by the Debtors, I am most concerned by proof of the second (knowledge), third (intent), and fourth (justifiable reliance) elements referenced by *In re Coley*.

The second element is that the Debtors knew that their statements or conduct was false or deceptive. Although it is difficult to discern from Johnnie's pleadings the extent of the Debtors' knowledge about the falsity of the alleged, express or implied, misrepresentation about the Escrow Account, the Debtors have also not shown the absence of a genuine issue of material fact on this element.

My role at summary judgment is to view the facts in the light most favorable to Johnnie's as the nonmoving party. Johnnie's alleges that the ongoing discussions about payment from the Escrow Account may be viewed as knowledge as to the falsity or the deceptiveness of the statements about the existence, or the permissible uses, of the Escrow Account. When viewing the facts in the light most favorable to Johnnie's, I cannot conclude that Johnnie's has not established that the Debtors had knowledge of the falsity or deceptiveness of their statements.

This leads to the third element required to be shown by Johnnie's – the Debtors' intent to deceive. It is well established that failure to perform as promised, by itself, gives rise to a cause of action for breach of contract, not actionable misrepresentation, fraud, or false pretenses under § 523(a)(2)(A). *In re Giquinto*, 388 B.R. 152, 166 (Bankr. E.D.Pa. 2008). Otherwise, almost all debts resulting from the failure to comply with a contract would be sufficient to establish nondischargeability. *In re Giquinto*, 388 B.R. at 166. Section 523(a)(2)(A) was patently not intended to create such a result. *Id.* A plaintiff must establish that the debtor entered into the contract never intending to comply with the contractual terms. *Id.*

15

Intent may be proven by circumstantial evidence. *In re Aug.*, 448 B.R. at 350. Here, Debtor Ricky Witmer allegedly signed the quote on January 8, 2013, but Johnnie's alleges that the Escrow Account discussions did not take place until the last week of January. See, Amended Complaint, ¶¶ 15-19; Pl.'s Br. Opp'n. Summ. J., p. 9, September 21, 2015, ECF No. 34. Although Debtor Ricky Witmer allegedly signed the proposal on January 8, 2013, Johnnie's asserts that it remained hesitant to finalize the equipment order and installation of the kitchen equipment. It is alleged that toward the end of January, after Johnnie's communicated its hesitation to proceed without its customary fifty percent deposit from the Debtors, the Debtors then intentionally made misrepresentations as to the existence or availability of the Escrow Account. Johnnie's then completed the contract between February 15, 2013, and March 31, 2013. Johnnie's contends that this establishes circumstantial evidence of the Debtors' intent to induce Johnnie's completion of the contract through misrepresentations. Pl.'s Br. Opp'n. Summ. J., p. 14 & Exhibit B, September 21, 2015, ECF No. 34.

On the other hand, the Debtors contend that the payments paid to and received by Johnnie's demonstrate that the Debtors intended to complete payments under the terms of the contract when the alleged contract was entered into. Defs.' Mot. Summ. J., ¶¶ 21-29 & Exhibits B, C, D, August 18, 2015, ECF No. 28. Further, that the payments allegedly demonstrate that there was no intent to misrepresent the existence of the Escrow Account. The Debtors also claim that the cancelled checks confirm that Johnnie's was aware that GEM was the entity with which Johnnie's was contracting. Id. Additionally, the Debtors allege that Johnnie's received at least one payment drawn on the account of GEM before beginning installation. Id.

16

However, it is unclear to this Court when Johnnie's ordered the kitchen equipment for installation at Stevi B's and when the alleged Escrow Account discussions took place. For example, Johnnie's alleges that only "[a]fter Debtors/Defendants made the representation … Plaintiff was induced to waive the 50% down requirement and order the rest of the equipment needed to complete the project." Amended Complaint, ¶ 18. Further, that to the "best of [Rodney Hocker's] recollection, [Debtor] Ricky Witmer's statements occurred after January 24, 2013." Pl.'s Br. Opp'n. Summ. J., Exhibit B, September 21, 2015, ECF No. 34. When viewing the facts in the light most favorable to Johnnie's, the alleged misrepresentation of the Escrow Account may have taken place during the end of January.

This would arguably demonstrate circumstantial evidence of intent on the part of the Debtors to induce Johnnie's to order the equipment and proceed with installation after Johnnie's had expressed concern about proceeding without the fifty percent deposit. I cannot find that Debtors have met their burden to show that there is no dispute of material fact on the intent element. Nor can I find that Johnnie's has not demonstrated the Debtors' intent to induce Johnnie's to order and install the kitchen equipment.

Johnnie's must also demonstrate justifiable reliance, the fourth element under *In re Coley*. Justifiable reliance is a lower standard than reasonable reliance, but still requires that the creditor prove it actually relied on the alleged misrepresentation or false pretenses. *In re Aug.*, 448 B.R. at 350. The Supreme Court in *Field v. Mans* held that a bankruptcy court must consider whether the reliance was justifiable, not whether it was reasonable. *Field v. Mans*, 516 U.S. 59, 72-75, 116 S. Ct. 437, 445-46, 133 L.Ed.2d 351 (1995). It is a subjective standard

17

which examines the plaintiff's reliance in light of its capacity and its knowledge. *In re Leos*, 462 B.R. 151, 155 (Bankr. M.D.Pa. 2011).

In this case, Johnnie's contends that there was "nothing patently false about the existence or the control over the account that was held by Kimco [as GEM's landlord]." Pl.'s Br. Opp'n. Summ. J., p. 13, September 21, 2015, ECF No. 34. The Debtors counter that Johnnie's could not have justifiably relied on the statements and paperwork provided by Debtor Ricky Witmer. They argue that when the excerpt from the lease showing the Escrow Account between GEM and Kimco entered the picture, that document should have controlled. Defs.' Br. Summ. J., p. 11, August 31, 2015, ECF No. 32. The Debtors assert that although § 523(a)(2)(A) requires only justifiable reliance, "reasonable reliance would be triggered at the moment" the writing, the Escrow Account, entered the discussion. Id.

However, justifiable reliance is a subjective standard and the Debtors want me to impose a "reasonable" reliance standard. A claim under § 523(a)(2)(A) is not the same as a claim under § 523(a)(2)(B). When proceeding under § 523(a)(2)(A) as Johnnie's is here, I must use the justifiable reliance standard. *Field v. Mans*, 516 U.S. at 72-75. Viewing the facts in the light most favorable to Johnnie's, I cannot determine on this record that Johnnie's did not justifiably rely on the Debtors' misrepresentations about the existence and availability of the Escrow Account to pay Johnnie's.

Finally, the last element is that Johnnie's must have sustained damages as a proximate cause of the Debtors' misrepresentations. The amount of damages is in dispute. Johnnie's alleges that the amount is $108,324.13 and the Debtors allege that the amount of damages is, at most, $91,537.97. Defs.' Short Statement of Facts, ¶ 18; Pl.'s Short Statement of Facts, ¶ 18.

18

Viewing the facts in the light most favorable to Johnnie's, there is a genuine issue of material fact and I cannot find that Johnnie's did not suffer some damages as a proximate cause of the Debtors' misrepresentations.

At this stage, numerous genuine issues of material fact exist concerning the *In re Coley* elements which precludes the grant of summary judgment in favor of the Debtor Ricky Witmer. Further, I am particularly concerned as to the sufficiency of the evidence as to Debtor Pamela Witmer. However, viewing the facts in the light most favorable to Johnnie's, there is a genuine issue of material fact about the extent of Debtor Pamela Witmer's involvement. Johnnie's has alleged that Debtor Pamela Witmer's name was included on the quotes and proposal submitted to the Debtors and that she was involved in the contract discussions and operations of Stevi B's. Thus, I cannot grant summary judgment as to Debtor Pamela Witmer.

The Debtors' Motion for Summary Judgment as to the alleged grounds of § 523(a)(2)(A) is denied.

### iii. Section 523(a)(2)(B)

I will now discuss § 523(a)(2)(B). Nowhere in the Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment does Johnnie's address § 523(a)(2)(B). At most, Johnnie's refers to the alleged Escrow Account in the amount of $150,000.00 with Kimco, GEM's landlord, which is purported to be part of the lease between GEM and Kimco.

Section 523(a)(2)(B) provides that a debt is nondischargeable when it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by. . . use of a statement in writing - (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such

19

money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . . ." 11 U.S.C. § 523(a)(2)(B).

Johnnie's has failed to plead in the Amended Complaint the elements required under § 523(a)(2)(B). Section 523(a)(2)(B) requires that Johnnie's prove that its claim is based on the Debtors' use of a writing which is: (i) materially false; (ii) respecting the Debtors' financial condition; (iii) on which Johnnie's reasonably relied; and, (iv) that the Debtors caused to be made or published with intent to deceive. *In re Aug.*, 448 B.R. at 351. In this case, I need only reach prong (ii) – respecting the Debtors' financial condition.

Section 523(a)(2)(B) does not refer to every material statement of fact made in writing to a creditor to induce agreement. *In re Feldman*, 500 B.R. 431, 436-38 (Bankr. E.D.Pa. 2013); *In re Campbell*, 448 B.R. 876, 886 (Bankr. W.D.Pa. 2011). This section is limited to statements about the financial condition of the debtor or an insider. *In re Feldman*, 500 B.R. at 436-38; *In re Campbell*, 448 B.R. at 886. The majority view holds that the term "financial condition" refers only to the debtor's overall financial condition, such as "solvency or net worth." *In re Feldman*, 500 B.R. at 436-38. The minority view looks at the broader term "financial condition" compared to "financial statement" to conclude that factual assertions regarding specific assets goes directly to a debtor's or insider's financial condition. *Id.* The Third Circuit has not yet ruled on this issue. *Id.* However, the trend has been toward the majority view's strict interpretation of the term "a statement in writing… respecting the debtor's or an insider's financial condition." *In re Feldman*, 500 B.R. at 436-38; *In re Campbell*, 448 B.R. at 886. This Court agrees with the majority approach followed by *In re Feldman* and *In re Campbell*.

20

Here, Johnnie's alleges that the Debtors proffered a partial copy of the lease between GEM and Kimco, which was used to indicate that the Debtors had a $150,000.00 Escrow Account to pay Johnnie's. However, attached as Exhibit F to the Amended Complaint is what appears to be a single page from the lease between GEM and Kimco. It is not clear from Exhibit F whether or not the single page is an excerpt from the final, executed lease between GEM and Kimco. That page states that the Escrow Account specifically excludes the use of funds from the escrow for costs incurred for the "Tenant's personal property, furniture, trade fixtures, equipment...." Amended Complaint, Exhibit F.

Applying the strict interpretation of § 523(a)(2)(B) to this case and viewing the facts in the light most favorable to Johnnie's, the alleged Escrow Account is, at most, a single asset of the Debtors. On the other hand, the Escrow Account may only be an asset of GEM. The Escrow Account does not reflect the overall financial condition of the Debtors. Nor does the Escrow Account demonstrate the Debtors' solvency.

Therefore, even viewing the facts in the light most favorable to Johnnie's, I conclude that there is no genuine dispute as to a material fact under § 523(a)(2)(B). Johnnie's has failed to establish the existence of an essential element under § 523(a)(2)(B) – that the single page evidencing the Escrow Account reflected the Debtors' overall financial condition or solvency. I will grant the Debtors' Motion for Summary Judgment as to § 523(a)(2)(B).

21

## IV.  Conclusion

For all the above reasons, the Debtors' Motion for Summary Judgment is granted as to

the § 523(a)(2)(B) claim and denied as to the § 523(a)(2)(A) claim.

By the Court,

_____

Robert N. Opel, II, Bankruptcy Judge

**(BI)**

Date: November 20, 2015

22